UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGUSTIN MENDEZ DELAO,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 16-02232-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. **INTRODUCTION**

Plaintiff Agustin Mendez Delao ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. **PROCEEDINGS BELOW**

On August 31, 2012, Plaintiff filed an application for DIB and an application for SSI, both alleging disability beginning April 16, 2010. (Administrative Record ("AR") 179, 183.) His applications were denied initially on February 7, 2013, and upon reconsideration on February 27, 2014. (AR 105, 115.) On March 27, 2014,

Plaintiff filed a written request for hearing, and a hearing was held on March 4, 2015. (AR 9-30, 122.) Plaintiff appeared and testified without representation, along with an impartial vocational expert ("VE"). (AR 13-31.) On April 30, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since April 16, 2010. (AR 90-100.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Plaintiff filed this action on October 24, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 16, 2010, the alleged onset date ("AOD"). (AR 92.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: cervical discogenic disease; lumbosacral discogenic disease; status post right shoulder arthroscopic rotator cuff repair, decompression, and acromioclavicular (AC) joint arthroplasty; status post left shoulder arthroscopic debridement; right wrist overuse syndrome; and left wrist overuse syndrome with ligament tear. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 94.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

///

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

> [P]erform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) specifically as follows: the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; frequently perform postural activities; occasionally climb ladders, ropes, or scaffolds; frequently walk on uneven terrain; occasionally perform above the shoulder work; and can speak very limited English.

(AR 94-95.)

At **step four**, based on the Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff is not capable of performing past relevant work as a welder. (AR 98-99.) At **step five**, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 99.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of the decision. (AR 100.)

## III. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record

as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### IV. **DISCUSSION**

Plaintiff raises three issues for review: (1) whether the ALJ properly assessed Plaintiff's RFC; (2) whether the ALJ posed a complete hypothetical question to the VE; and (3) whether the ALJ properly considered Plaintiff's subjective complaints and erred in finding them not credible. (Joint Stipulation ("JS") 3, Dkt. No. 18.) Plaintiff contends that the ALJ failed to take into account Plaintiff's severe wrist impairments when assessing Plaintiff's RFC, failed to include all of Plaintiff's limitations in the hypothetical posed to the VE, and failed to properly credit Plaintiff's testimony. (*See* JS 4-5, 8-9, 11-15.) The Commissioner contends that the RFC is supported by the record, the question posed to the VE contained all of Plaintiff's credible limitations, and Plaintiff's credibility was correctly discounted. (JS 7, 9, 15-19.) For the reasons below, the Court agrees with the Commissioner.

///
///
///

## A. The ALJ's Credibility Determination Is Supported By Substantial Evidence[2]

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony. (JS 16.) The Commissioner argues that the ALJ's reasons for finding Plaintiff not fully credible are clear and convincing, supported by substantial evidence. (JS 17-19.)

### 1. Plaintiff's Testimony

Plaintiff testified with the help of a Spanish-language interpreter. (*See* AR 13-14.) Plaintiff testified that he was 52 years old and had completed sixth grade. (AR 15.) He can read and write in Spanish, but "[n]ot much" in English. (*Id.*) Plaintiff testified that he worked as a welder for eight or nine years. (AR 18.) At that job, he lifted 80 to 100 pounds. (AR 20.) Plaintiff later testified that he "didn't have to lift anything" while welding, but he sometimes moved things that weighed over 50 pounds. (AR 21.)

Plaintiff testified that his last job as carpenter lasted for one month during the previous year. (AR 18-19.) He helped to build the frame for a Wal-Mart store. (AR 19-20.) Plaintiff testified that he had to lift plywood to cut it with a skill saw, but he never had to lift more than 10 pounds. (AR 20.) Plaintiff testified he broke his left thumb, or a tendon in his left hand, while at that job. (AR 19.) Before that injury, he could lift 10 to 15 pounds on his left side. (AR 23.)

Plaintiff testified that he cannot work now due to arthritis in his wrists. (AR 21.) Plaintiff had surgery on both shoulders in 2011 and is "still not doing well off of that." (AR 21-22.) Plaintiff testified that the surgeries provided "[v]ery little help." (AR 22.) Plaintiff testified that he has problems sleeping, and when he lies "to one side or the other side, it helps—it causes [him] pain on both shoulders."

---

[2] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of credibility first before discussing the overall RFC determination.

5

(*Id.*) Plaintiff testified that he has problems lifting things. (*Id.*) He also testified that he has "a lot of pain on the nerve system of [his] neck." (*Id.*)

Plaintiff testified that before a February 10, 2010 injury, he could lift 80 to 100 pounds. (AR 23.) Since then, he has not been lifting anything and has not been working. (*Id.*) Plaintiff testified that he could lift about 10 to 15 pounds now, but he could not lift overhead due to his shoulders. (AR 23-24.) Plaintiff testified that he would lift to the top of his head, "but with pain on [his] shoulders and on [his] neck." (AR 24.)

Plaintiff testified that he has arthritis in his ankles, and he has trouble walking because his ankles hurt "very much." (AR 22, 24.) He also testified that he has two bad discs that are shifted in his lower back. (AR 22.) Plaintiff testified that he has pain in his back when he sits for a long time. (AR 24.) He can sit for only a half an hour, "if that much." (*Id.*) Plaintiff testified that he can be on his feet for only 20 or 30 minutes at a time, and he needs to be walking or moving. (*Id.*) Plaintiff testified that he "hardly walk[s]," but when he does, he walks no more than a half of a block because he starts to have lower back pain on his left side. (*Id.*)

Plaintiff testified that he could not walk for even two hours off and on during an eight-hour period, and he has been that restricted since 2010. (AR 24-25.) Plaintiff then testified that he was on his feet all day during his one-month, full-time carpenter job the prior year. (AR 25.) He explained that the job consisted of standing up and leaning on a table to cut wood. (*Id.*) He also used a forklift. (AR 26.) Plaintiff testified that it was a "trial" job that lasted a month and a half. (*Id.*)

### 2. **Applicable Legal Standards**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible." (AR 95.) The ALJ relied on the following reasons: (1) activities of daily living; (2) inconsistent statements; (3) lack of objective medical evidence to support the alleged severity of symptoms; and (4) routine and conservative treatment. (AR 95-97.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Activities of Daily Living

The ALJ found that some of Plaintiff's reported activities—including personal care, taking his son to and from school, household chores, watering trees and grass, running errands, and paying bills—are "inconsistent with his alleged disabling functional limitations. (AR 95.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346

(9th Cir. 1991), but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

During a February 2014 psychiatric evaluation, Plaintiff reported taking his son to school and picking him up, doing therapy, feeding his chickens, completing household chores, running errands, bathing and dressing himself, watering his trees and grass, and going for walks. (AR 484.) Plaintiff's son helps him pay bills. (*Id.*) Plaintiff had previously reported similar activities during a March 2012 orthopedic examination. (AR 374.)

The fact that Plaintiff reported performing household tasks and basic errands does not detract from his overall credibility, as the record does not show that this consumed a substantial part of Plaintiff's day. Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

///

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Inconsistent Statements

The ALJ found that Plaintiff made inconsistent statements about his ability to work during the alleged disability period. (AR 96.) Specifically, the ALJ noted that, despite Plaintiff's testimony that he had been limited to standing only four hours per day since 2010, Plaintiff worked as a carpenter for a month and a half in 2014, where he was required to stand for eight hours per day. (AR 96.) The ALJ found that Plaintiff's ability to work after his AOD "diminishes the credibility of his allegations of a disabling condition." (AR 92.)

As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and his other statements, conduct, and daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, Plaintiff testified that his carpenter job consisted of being on his feet all day, "standing up, leaning on a table and cutting wood." (AR 25.) Plaintiff's testimony that he was able to perform a full-time job while allegedly disabled undermines the credibility of his pain testimony. *See Fregoso v. Astrue*, 2012 WL 2195655, at *4 (C.D. Cal. June 14, 2012) ("[P]laintiff's testimony at the hearing that she had been looking for work was inconsistent with plaintiff's assertions that she suffers from disabling impairments which preclude her from working at all."), *aff'd* (9th Cir. Aug. 13, 2013). Moreover, although Plaintiff argues that he should not be punished for "trying to work despite his impairments" (JS 14), Plaintiff did not testify that he stopped working due to his preexisting disabling impairments. Instead, Plaintiff explained that the job's short time period was due to the job being "a trial," during which time he suffered a new thumb injury. (AR 19, 26.)

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Lack of Supporting Objective Medical Evidence

The ALJ also discounted Plaintiff's credibility because his "allegations are greater than expected in light of the objective evidence of record." (AR 97.)

The ALJ noted that "the objective findings do not support allegations of disabling impairments" in regard to Plaintiff's back disorder. (AR 96.) A July 29, 2011 workers' compensation medical evaluation revealed tenderness in Plaintiff's cervical spine; mild disc protrusion at C4-C5, C5-C6, and C6-C7; and bilateral neural foraminal narrowing and facet arthropathy. (AR 328-29.) That report also noted "paravertebral muscle spasm and tenderness" in the lower lumbar area, disc protrusion at L2-L3, anterior annular fissure at L3-L4, and thoracic spine sprain/strain with an MRI finding of mild disc protrusion at T9-T10 and T10-T11. (AR 328-29.) Examination notes from March 8, 2012 indicated that Plaintiff had a normal range of motion, "no evidence of muscle rigidity or spasm" in his cervical spine, some scapular pain but no palpable tenderness in the mid-back, mild palpable tenderness of the lumbosacral spine, and "no evidence of any paravertebral muscle rigidity or spasm." (AR 346, 352-53.) Straight leg raising tests performed both sitting and supine were reported as negative. (AR 353.) The ALJ also noted that a consultative orthopedic evaluation on January 17, 2013, revealed "limited positive findings," including cervical and lumbar spine tenderness and reduced range of motion in the lumbar spine. (AR 96, 473.) At that examination, Plaintiff had negative straight leg raising tests, performed both sitting and supine. (AR 473.) Plaintiff had a normal gait, could walk without difficulties, was able to toe and heel walk, and did not use any assistive device to ambulate. (*Id.*) The examining physician diagnosed Plaintiff with degenerative disc disease of the lumbar spine and cervical and lumbar musculoligamentous strain. (AR 475.) The ALJ determined that "[t]hese findings are inconsistent with the assertion of a disabling condition." (AR 96-97.)

Regarding Plaintiff's bilateral shoulder disorder, Plaintiff underwent right shoulder arthroscopic surgery in March 2011. (AR 296-98.) The ALJ noted that Plaintiff "has been treated conservatively" thereafter. (AR 97.) A July 29, 2011 workers' compensation evaluative examination noted tenderness in Plaintiff's shoulders and a diagnosis of bilateral shoulder pain with possible impingement. (AR 328-29.) The examining physician recommended continuing with a home exercise program and the use of transdermal compounding cream. (AR 330.) At a March 8, 2012 examination, Plaintiff reported that his right shoulder pain "has improved since the date of injury" and was temporarily improved with rest. (AR 335.) Plaintiff's left shoulder pain "remained unchanged," but it was temporarily improved with rest and medication. (AR 335-36.) The examining physician noted atrophy of the anterior musculature in the left shoulder and palpable tenderness in the bilateral shoulders. (AR 347.) There were negative impingement signs in Plaintiff's bilateral shoulders, and Plaintiff was able to reach his mid-back on both sides. (AR 348.) The ALJ also noted that a December 27, 2012 treatment note indicated that Plaintiff "has done relatively well following the surgery on both shoulders," although Plaintiff still reported pain. (AR 97, 411.) The ALJ concluded that this impairment was adequately addressed with a RFC limitation and did not warrant a finding of disability. (AR 97.)

Additionally, the ALJ determined that the findings relating to Plaintiff's bilateral wrist overuse syndrome "do not support the allegation of an impairment that precludes all work." (AR 97.) Treatment notes from March 8, 2012 indicate "numbness and tingling of all the fingers" in the morning. (AR 336.) Plaintiff described "burning pain" in his wrists when at rest and "sharp shooting pain" with repetitive use. (*Id.*) Plaintiff also reported that his wrist pain was temporarily improved with rest and medication. (*Id.*) The examining physician noted palpable tenderness but no gross deformity, no local swelling, no evidence of triggering of the fingers, and nothing abnormal in x-rays of both wrists. (AR 349, 355.) Plaintiff

was able to fully extend all fingers and make a complete fist with his fingertips at mid-palm. (AR 350.) During a grip strength test using the Jamar Dynamometer, the physician noted that Plaintiff gave "suboptimal effort." (AR 350-51.) A January 2013 orthopedic consultation later showed no tenderness on palpation and full and painless range of motion in the wrists. (AR 473.) Plaintiff also had no tenderness in his hands and full and painless range of motion in his fingers. (*Id.*) His basic hand functions "were well preserved in fine and gross manipulations," and Plaintiff was again able to make a full fist with his fingertips brought to mid-palm. (*Id.*) The examining physician found "no hand use impairment and no fine fingering manipulation impairment." (AR 475.) A later functional assessment in January 2014 also reported "full use of his hands for fine and gross manipulative movements." (AR 482.)

Although there are some conflicting treatment notes, the evidence can rationally support the ALJ's determination. Accordingly, the Court must uphold his interpretation of the evidence. *See Ryan*, 528 F.3d at 1198; *Robbins*, 466 F.3d at 882.

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

### d. Reason No. 4: Routine and Conservative Treatment

Finally, the ALJ discounted Plaintiff's credibility because Plaintiff received "routine, conservative treatment for his impairments." (AR 97.) An ALJ may discount a claimant's credibility based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

12

The ALJ noted that treatment records from March 8, 2012 indicated that Plaintiff's neck pain was "temporarily improved with rest, taking medication and receiving massage." (AR 96, 335.) Plaintiff also reported temporary improvement in his wrists and shoulders from medication and physical therapy "consisting of massage and electrical stimulation." (AR 339.)

Workers' compensation medical examiner Eduardo E. Anguizola, M.D., completed a pain management reevaluation of Plaintiff on July 29, 2011. (AR 327-33.) Dr. Anguizola noted that he "discussed the options of interventional pain treatment in regards to epidurals and facet blocks in [Plaintiff's] back and his neck." (AR 330.) Dr. Anguizola noted that "at this juncture[, Plaintiff] would just like to continue the medication and therapy program." (*Id.*)

At another pain management reevaluation on December 27, 2012, Dr. Anguizola noted that Plaintiff "denied any interventional pain treatment, which again was described to him in detail, and does not feel that he wants any injections. He just would like to continue with his conservative treatment." (AR 96, 412.) Dr. Anguizola opined that Plaintiff had "reached a permanent and stationary level from a pain management standpoint." (AR 412.)

By relying on Dr. Anguizola's professional characterization of Plaintiff's treatment as "conservative," along with Plaintiff's refusal to pursue more aggressive options that were available to him, the ALJ did not err in discrediting Plaintiff's testimony concerning the intensity of his pain. *See Parra*, 481 F.3d at 750-51.

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

### 4. Conclusion

Since the Court found that one of the ALJ's reasons for discounting Plaintiff's credibility—activities of daily living—is not clear and convincing, the Court must decide whether the ALJ's reliance on that reason was harmless error.

*Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id.* The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id.* (emphasis in original) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, given the discussion above concerning Plaintiff's inconsistent statements, the lack of supporting objective evidence, and the nature of Plaintiff's treatment, the Court concludes the ALJ's credibility finding is legally valid and supported by substantial evidence.

**B.     The RFC Is Supported by Substantial Evidence**

Plaintiff contends that the ALJ erred in formulating the RFC without including limitations regarding Plaintiff's severe wrist impairments. (JS 4-5.) The Commissioner contends that the ALJ considered Plaintiff's wrist impairments and properly assessed the RFC based on the medical evidence. (JS 5-7.)

**1.     Applicable Legal Standard**

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR §§ 404.1545(a)(3), 404.1546(c). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR §§ 404.1513(a), 404.1545(a)(3). "As a general rule," the opinion of a treating physician should be given more weight than the opinion of a non-treating physician. *Lester*, 81 F.3d at 830. A treating physician's opinion is not, however, conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is also required to consider as opinion evidence the findings of state agency medical consultants and must explain the weight given to those opinions. *Sawyer v. Astrue*, 303 F. App'x 453, 455 (9th Cir. 2008). The ALJ may rely on the opinion of a non-treating physician instead of the conflicting opinion of a treating physician if he

14

provides "specific and legitimate" reasons supported by substantial evidence in the record. *Sportsman v. Colvin*, 637 F. App'x 992, 994 (9th Cir. 2016) (citing *Lester*, 81 F.3d at 830); *Tonapetyan*, 242 F.3d at 1149; *Magallanes*, 881 F.2d at 751.

### 2. Discussion

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence" in accordance with social security regulations. (AR 95.)

The ALJ noted that the findings related to Plaintiff's back disorder were "inconsistent with the assertion of a disabling condition, although they do support limitations to medium work, which are accommodated by the residual functional capacity herein." (AR 96-97.) The ALJ also noted that the "above-mentioned residual functional capacity provides a bilateral shoulder work limitation that adequately addresses the claimant's abilities given this impairment." (AR 97.)

Plaintiff does not dispute the ALJ's findings or RFC limitations related to Plaintiff's back and shoulders. Plaintiff's sole contention is that the ALJ erred in not including limitations regarding Plaintiff's right wrist overuse syndrome and left wrist overuse syndrome with ligament tear, which were deemed "severe impairments." (JS 4-5; *see* AR 92.)

Concerning Plaintiff's wrist overuse syndrome, the ALJ concluded that "the findings do not support the allegation of an impairment that precludes all work." (AR 97.) The ALJs decision with respect to Plaintiff's bilateral wrist overuse syndrome stated:

> The notes from the agreed medical examination on March 8, 2012 showed [that Plaintiff] had some tenderness in his bilateral wrists and bilateral hands. However, he had no gross deformity, no swelling, no evidence of trigger fingers, and he was able to make a complete list and extend all fingers. In addition, the x-ray of [Plaintiff's] bilateral wrist [was] normal and [Plaintiff] had negative Phalen's and Tinel's tests bilaterally. Further, [Plaintiff] reported his wrist pain is relieved

> with rest and medication. Tellingly, the examiner reported [that Plaintiff] gave suboptimal effort during the grip strength test via the use of the Jamar Dyanmometer. . . . Then Dr. Bernabe's January 17, 2013 inspection of [Plaintiff's] bilateral wrist revealed normal alignment and contour, full and painless range of motion, and no tenderness on palpation. The findings are inconsistent with the assertion of a disabling condition.

(AR 97.)

In reviewing the record, the Court finds that the ALJ properly considered and weighed the evidence, including opinion evidence, in evaluating Plaintiff's wrist impairment.

The ALJ found that the assessments of Dr. Bernabe, Dr. Moazzaz, and the state agency medical consultants were supported by medical evidence and "adequately consider the claimant's subjective complaints." (AR 98.)

The ALJ gave "great weight" to the January 17, 2013 opinion of Dr. Bernabe. (AR 97.) Dr. Bernabe's functional assessment limited Plaintiff to lifting and carrying 50 pounds occasionally and 25 pound frequently, frequent pushing and pulling, walking and standing for six hours during an eight-hour day, sitting for six hours during an eight-hour day, frequent walking on uneven terrain, frequent climbing of ladders and working at heights, and frequent postural movements. (AR 475.) Dr. Bernabe also noted that "[t]here is no hand use impairment and no fine fingering manipulation impairment but overhead motion maybe restricted to occasional basis on both upper extremities." (*Id.*)

The ALJ also gave "great weight" to the January 19, 2014 opinion of Dr. Moazzaz. (AR 97.) Dr. Moazzaz's functional assessment limited Plaintiff to lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking for six hours during an eight-hour day, sitting for six hours during an eight-hour day with normal breaks, frequent postural activities, and frequent overhead activities. (AR 481-82.) Dr. Moazzaz also noted that Plaintiff "has full use of his hands for fine and gross manipulative movements." (AR 482.)

The ALJ gave "significant weight" to the state agency medical consultants, who assessed similar limitations, including no handling or fingering limitations. (AR 98; *see* AR 38-39, 64-65.)

The ALJ rejected the conclusion of "temporarily totally disabled" as found in Plaintiff's workers' compensation medical records. (AR 98.) The ALJ explained that such a conclusion "is not entitled to controlling weight and is not given special significance" because disability is an issue reserved for the Commissioner. (*Id.*) The ALJ also noted that those examinations and conclusions were made solely in the context of a workers' compensation claim, which affects their credibility and relevance. (*Id.*)

The opinion evidence, combined with evidence that Plaintiff put forth suboptimal effort, suggesting exaggeration of symptoms, supports the ALJ's determination that Plaintiff's bilateral wrist overuse syndrome was "inconsistent with the assertion of a disabling condition." *See Escobar v. Colvin*, Case No. 14CV02741-LAB (BGS), 2016 WL 354416, at *11 (S.D. Cal. Jan. 4, 2016) (evidence of possible exaggeration coupled with opinion evidence that claimant "could complete simple, repetitive tasks constitutes substantial evidence to support ALJ's RFC determination" that claimant "is able to sustain simple, repetitive tasks").

Further, the ALJ's determination that Plaintiff's severe impairment of bilateral wrist overuse syndrome should not be accommodated with RFC limitations was not error. "A severe impairment need not necessarily 'correspond to limitations on a claimant's ability to perform basic work activities.'" *Thomas v. Comm'r of Soc. Sec. Admin.*, 480 F. App'x 462, 463 (9th Cir. 2012) (quoting *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009)). Here, the medical opinion evidence and the evidence of symptom exaggeration constitute substantial evidence to support a RFC assessment that does not accommodate Plaintiff's bilateral wrist impairment. *See Neff v. Colvin*, No. CIV 12-2122-PHX-

MHB, 2014 WL 800516, at *3 (D. Ariz. Feb. 28, 2014) ("[T]he ALJ could legally find that, while Plaintiff's carpal tunnel syndrome met the severity standard at step two, it did not require the inclusion of additional functional limitations in the residual functional capacity assessment.").

Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. *See Arrieta v. Astrue*, 301 F. App'x 713, 715 (9th Cir. 2008) (finding that substantial evidence supported the RFC determination when the ALJ properly evaluated the opinions of treating physicians and relied on supporting medical reports and testimony).

### C. The ALJ Posed a Complete Hypothetical to the VE

Plaintiff contends that the ALJ erred in posing a hypothetical that omitted limitations regarding Plaintiff's ability to handle, grip, and grasp. (JS 8.) The Commissioner contends that the hypothetical properly reflected the RFC and contained all of the limitations that the ALJ found credible. (JS 9.)

#### 1. Applicable Legal Standard

At step five, it is the Commissioner's burden to establish that, considering the RFC, a claimant can perform other work. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988); *see* 20 CFR 404.1520(g)(1). To make this showing, the ALJ may rely on the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The VE's testimony "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The ALJ may pose hypothetical questions to the VE to establish (1) what jobs, if any, the claimant can do, and (2) the availability of those jobs in the national economy. *Tackett*, 180 F.3d at 1101. These hypotheticals must depict the claimant's disability in a manner that is "accurate, detailed, and supported by the medical record" and "set[s] out all of the claimant's impairments." *Id.* (citing *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279-80 (9th Cir. 1987)).

18

### 2. Discussion

At the hearing, the ALJ posed the following hypothetical to the VE:

> Assume . . . that the individual could do work at the medium exertional level, at the medium level; could lift or carry 50 pounds occasionally, and 20 pounds frequently; could stand and walk for about six hours out of eight; could sit for about six out of eight; postural activities would be limited to frequent. The person would be limited to occasional ladders, ropes . . . scaffolds . . . . [W]ould be limited to frequent, uneven terrain; only occasional above shoulder work; and the individual can speak ve[r]y limited English.

(AR 28.) The VE testified that a person with those limitations could not perform Plaintiff's past work as a welder. (*Id.*) The VE then indicated that the unskilled positions of food service worker, sweeper operator, dining room attendant, and "some others" would be available in significant numbers. (AR 29.)

Plaintiff contends that the hypothetical is deficient because it fails to include "any limitations regarding plaintiff's severe impairments of right overuse syndrome and left wrist syndrome with ligament tear." (JS 8.) However, as discussed above, the ALJ's RFC determination is supported by substantial evidence. The ALJ posed a hypothetical containing limitations that were nearly identical to the limitations found in Plaintiff's RFC.[3] Consequently, the hypothetical is also supported by substantial evidence.

Accordingly, by posing a hypothetical that was supported by substantial evidence, the ALJ did not err in excluding Plaintiff's alleged inability to handle. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (finding that, because the ALJ's RFC assessment was proper and complete, the ALJ's hypothetical based on the RFC was also proper and complete); *Sample*, 694 F.2d at

///

---

[3] The hypothetical's limitations were, in fact, slightly more restrictive than the RFC's limitations. The RFC permits lifting or carrying 25 pounds frequently; the hypothetical permitted lifting or carrying only 20 pounds frequently. (AR 28, 94.)

644 ("[T]he limitation of evidence contained in the hypothetical at issue would be objectionable only if the assumed facts could not be supported by the record.").

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 6, 2017

/s/ Rozella A. Oliver
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**